NOLAN v. PERLOFF

(January 21, 1929.  Opinion and Decree.)
(April 15, 1929.  Opinion and Decree on
Rehearing.)
(May 21, 1929.  Writ of Certiorari and
Review Refused by Supreme Court.)

U.  Marinoni, of New Orleans, attorney
for plaintiff, appellee.

Benj. Y. Wolf, of New Orleans, attorney
for defendant, appellant.

JONES, J.  In his petition, plaintiff, a reputable architect of this city, claims $1,238.95 as commission for preparing plans and specifications for a building of defendant.

The architect avers that during the month of September, 1923, he was employed by the defendant to draw plans and specifications for the alteration of an old store building, corner Frenchmen and Decatur Streets, this city; that, acting under these instructions, with much labor and skill he prepared the requested plans with the consent and knowledge of the defendant, and submitted them to various contractors in this city.

On October 3, 1923, he wrote the defendant and sent him a list of the bids on the work and recommended the acceptance of the lowest bid, which had been made by Haffner & Taylor, contractors of this city, who offered to do the work for $21,379.00; that defendant then for the first time informed plaintiff that the bid was too high and that he desired another set of plans for a new building, using old material, to cost about $17,000.00; that when a preliminary plan for the new building to be constructed largely out of old material, at a price of $17,000.00, had been prepared, it was submitted to defendant by letter on October 8, but he remained silent, and the matter remained in statu quo for some months, until plaintiff discovered that defendant had caused a new building to be erected under plans prepared by another firm of architects, without any notice to him.

That in accordance with reasonable prices and the rules and practice of architects in New Orleans, he was entitled to 5 per

cent commission on the lowest bid made in accordance with his original plans and specifications for the repair and alteration of the old building, which would amount to the sum of $1,068.95, and that, in accordance with the same rules and practice of the established architects in New Orleans, he was justly entitled to the sum of $170.00 for the preliminary plan for the new building which was to have been constructed out of the old material, and, accordingly, he prayed for the amounts claimed.

Attached to and made part of plaintiff's petition are copies of his letters to defendant of October 3, October 4, October 8, and October 31, all of which were duly proved to have been mailed to defendant at his address in New Orleans.

Defendant answered, denying all indebtedness, and averring that he had called at the office of plaintiff and agreed that plaintiff should draw up plans for a building not to cost more than $12,000.00 on a commission basis of 5 per cent and that he had agreed to pay this commission provided that the plans were accepted and the building erected for not more than $12,000.00; that when the lowest bid for the proposed repairing of the building in accordance with plans and specifications as prepared by plaintiff was $21,379.00, the agreement had been broken, and there was nothing due plaintiff for his work.

Defendant denied specifically the allegation with reference to the second plan for the building to cost $17,000.00 The case went to trial on these pleadings. There was judgment for plaintiff in the full amount claimed, and defendant has appealed to this court.

It will be seen, from the above outline, that plaintiff is suing on a quantum meruit for what he alleges to be a reasonable fee for his architectural plans, and that defendant avers that there was a specific contract for a limited amount, and that the limit having been exceeded, no indebtedness was incurred. Only two questions are before us:

First, one of fact as to the existence vel non of the contractual limit on the price of the proposed building, and

Second, if it be found that there was no such contract, the reasonableness of the charges claimed by plaintiff.

The following facts seem to be admitted by both plaintiff and defendant, and to be thoroughly established by the evidence:

Defendant, who wished to repair his old three-story store building at the corner of Frenchmen and Decatur Streets, in this city, first discussed the matter with a contractor, by the name of Goldenberg, whose office was just across the street. Goldenberg, who knew nothing of drawing plans or specifications and had done comparatively little contractual work, made a very rough, crude sketch of some of the proposed alterations on an ordinary piece of old white paper. Carrying this sketch, he took defendant with him to plaintiff's office, as he had been favorably impressed by some of the plaintiff's work on a building for which he had acted as foreman. At this meeting in plaintiff's office it was agreed that a 5 per cent commission would be a reasonable fee. Plaintiff stated that he would have to see the building and measure its cubic contents before he could proceed further. A little later, plaintiff, Goldenberg, and defendant went down to the building, and after plaintiff had examined the building thoroughly, he agreed to prepare plans and specifications for the repair of the entire structure.

He then prepared the plans and specifications, as outlined in his petition, and submitted them to various contractors, and finally secured five or six bids, which were duly transmitted to the defendant; the lowest bid being that of Haffner & Taylor for $21,379.00. These contractors and Jno. A. Petty, another well-known contractor of this city, testify that their bids were based on the plans and specifications of plaintiff. Defendant, who found these bids too high, proceeded no further with the construction of the building until some time in the summer of 1925, when he had engaged other architects and had a practically new building erected on the same site for more than $22,000.00.

On the disputed question as to the price limit being fixed in the agreement, Nolan, plaintiff, swears positively that no price was ever fixed, and that it was practically impossible for any architect to tell with certainty exactly how much the repairs of an old building would cost. In this statement he is confirmed by two other well-known architects in this city, both of whom additionally testify that Nolan's charge was most reasonable, under the circumstances, for the plans and specifications which he had prepared.

Denton, the office foreman for plaintiff, testifies that he took the bids down to defendant, Perloff, and there, in the presence of Mrs. Perloff, was informed by defendant that the bid was too high, as he had been informed by a contractor that the work could be done for $12,000.00. Denton swears that he then asked Perloff if Mr. Nolan had ever fixed any limit beyond which the price should not go, and Perloff answered in the negative.

On direct examination, Goldenberg, the contractor who brought plaintiff and defendant together, testifies that Mr. Nolan did not fix any price, but promised to prepare a sketch for the repairs and restoration of the building at a price between $10,-000.00 and $12,00.00, which was all that Perloff said he could afford to spend at that time. On cross-examination he admitted that his sketch had covered no details, that it was "just ordinary guessing work," and that the bid submitted by Haffner & Taylor was a reasonable one for the work required by Nolan's plans, which plans, he said, covered not only what he had originally suggested, but a great deal more additional work; that he had failed to make a bid on Nolan's plans and specifications, as he had originally intended to do, because he realized that the work was going to cost more than Perloff wished, but he denied that he had advised Perloff to reject all bids and to drop the matter.

The defendant testifies on direct examination that Nolan had told him it was hard to speak definitely about alterations, but that he would give a rough estimate, which would not cost more than $12,000.00, and that he had said, "if it won't cost over twelve (thousand dollars) I will be in a position to carry it out." He said that he was not at home when Denton brought the bids and that he had never authorized Denton to ask Nolan to make a new preliminary plan for $17,000.00. On cross-examination he admitted that he had received, some time in September, the plans and specifications from Nolan, and that he had submitted these plans and specifications to Goldenberg and various other contractors, and he also admitted that he had received Nolan's letter of October 3, transmitting the six bids of the contractors; but he denied that he had ever discussed the matter any further with Goldenberg, and he also denied getting any letters from Nolan, except a letter of demand some 18 or 19 months after receipt of the bids.

When asked why he had not communicated further with Nolan, his only answer was that he did not think it necessary, although he admits keeping the plans and drawings, which stated on their face they were the property of the architect William T. Nolan.

Mrs. Perloff denies that she was present at the interview of her husband with Denton when he brought the bids, but she does admit that she did receive a package from an older man which she thought contained the bids.

It is thus seen that there are two witnesses for plaintiff on the question of the contractual limit and two for the defendant, and if this were the only evidence, we might feel justified in reversing the decision of the lower court on a question of fact—a step which we are always loath to take. But we find very strong confirmatory evidence of Nolan's position in the copies of the letters attached to his petition, which were proved to have been sent to defendant, and some of which defendant admits receiving. In the first letter of October 3, after giving the name of Haffner & Taylor and their bid of $21,-379.00 as the lowest, and then listing the names of the other contractors with their bids, we find the following two significant paragraphs:

"All these contractors are figuring upon doing the same work, all as outlined in the plans and specifications which were gone over and approved by you.
"I consider the low bid as a very favorable one and these contractors have advised me that they are prepared to start work immediately."

It is improbable that the architect would have written that he considered a bid of $21,379.00 very favorable if he knew that the outside limit allowed by the owner was $12,000.00.

On October 4, Nolan wrote Perloff as follows:

"My representative Mr. Denton reported to me the conversation which you had with him relative to the bids which I submitted to you for alterations, repairs, etc., to your building on Frenchmen St.

"In accordance with this suggestion, I am working up another set of plans with a view of getting an estimate upon them to ascertain the price of a two-story building to occupy your premises down there using as much of the present walls as will be found in good order for supporting this building.

"Just as quickly as I can develop this estimate, I will get in further touch with you so that you may decide which matter you will proceed with.

"With kind regards I am. * * *"

On October 8, he wrote as follows to Perloff:

"In further reference to your request to make an estimate on what a two-story building would cost at your property on Frenchmen St., demolishing the present building and using the walls of it where they are sound and any other materials that may be found to be usable.

"I have worked out a preliminary plan in this connection and I estimate that a two-story building will cost in the neighborhood of $17,000.

"If this price is interesting, I can immediately put additional work on to the plans and complete them and place them in the hands of contractors for early bids.

"Thanking you for your advice, I am. * * *"

On October 31 he wrote asking for a decision as to which set of plans would be used, and offering to consult further on the matter if Perloff wished to do so. On

June 13, 1925, after he had seen in the Manufacturers' Record that Perloff had employed other architects to put up his building, he wrote demanding payment of the amount claimed herein.

We consider these letters sufficiently confirmatory of the general testimony of plaintiff to sustain the decision of the lower court in favor of plaintiff as to the fact that he was entitled to payment for both sets of plans. Even if Denton had overstepped his authority in asking Nolan to prepare the new sketch for a cheaper building, we think defendant's silence, when he was notified that the architect was preparing a plan for this more reasonable structure indicates that he acquiesced in this work, and that it is now too late to deny approval after the work has been completed.

This conclusion is sustained by the following authorities: Sully vs. Pratt, 106 La. 601, 31 So. 161, where the court uses the following language:

"An intending builder, by calling. upon an architect to prepare plans and specifications which he afterwards receives, renders himself liable to pay for them whether they are used or not."

And the case of Diboll, Owen & Goldstein, Ltd., vs. Grunewald, 7 Orl. App. 59.

Defendant relies upon the case of McDonnell vs. Dreyfous, 144 La. 891, 81 So. 383. We do not find that decision controlling, because that was a specific contract for a new building, and plaintiff himself admitted that there was a discrepancy between the amount which the owner wanted to pay and the lowest bid of $19,000.00.

The testimony of the architects and contractors in this case is to the effect that it is well-nigh impossible to fix the cost of repairs and restoration of an old building with any certainty, but that the price of a new building is far more definitely ascertainable. Furthermore, suit was filed by McDonnell while Dreyfous was still working with him on change of plans.

On this point, see, also, the following authorities: Mohr vs. Swoop, 13 Orl. App. 94; Rosenthal & Gross vs. Jay, No. 7352, Ct. App. (Teissier's Digest).

On the second question as to the reasonableness of the compensation, we find that the defendant himself admits that he had agreed to pay 5 per cent for preparing the original plans and specifications on a price of $12,000.00, and in this statement he is confirmed by his friend, Goldenberg. We further find that the averment of plaintiff as to the reasonableness of a 5 per cent fee for the work done in this instance is confirmed by both the reputable architects who testified in this matter, and there is no contradictory evidence on this point.

The fee of 1 per cent for drawing the subsidiary second plan for the new structure to be built out of the old material is plainly reasonable.

For above reasons, the judgment is affirmed.

Judgment affirmed.

---

ON REHEARING.

WESTERFIELD, J. Upon further consideration we are convinced that our original decree is correct and it is therefore reinstated.

Original decree reinstated.