## OVERTON v. NORDYKE

---

(February 11, 1929. Opinion and Decree.)
(April 15, 1929. Rehearing Refused.)
(April 22, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

---

Claude W. Duke, of New Orleans, attorney for plaintiff, appellee.

James G. Schillin, of New Orleans, attorney for defendant, appellant.

JANVIER, J. This is a suit by a physician against a husband for professional services rendered to a wife.

The husband refuses to pay, claiming that the wife deserted him and left the matrimonial domicile, returning to Hammond, Louisiana, to live with her mother. He also contends that as the juvenile court in New Orleans has ordered him to pay a fixed monthly allowance to his wife, the amount of that allowance is the limit of his obligation to his wife directly or for her necessities and that this is particu-

larly true in the case of the present plaintiff as he had full knowledge of the alimony proceedings, having, by interrogatories, testified therein. Lastly defendant contends that the suit should be dismissed because the petition is addressed to "The First City Court for the Parish of Orleans" instead of to the "First City Court for the City of New Orleans" which latter is its correct title.

Defendant's last contention, if well founded, would effect the peremptory dismissal of the suit and we, therefore, feel that it should be disposed of before we go into a discussion of the other questions involved.

Defendant cites three cases on which he relies for a dismissal of this suit: Lukis vs. Allen, 45 Ann. 1447, 14 So. 186; Watson vs. Pierce, 6 Martin (N. S.) 417, and Wadsworth vs. Harris, 1 Rob. 96; all of these cases as well as the case of Sam Kunnes vs. Kogos, 10 La. App. 602, 119 So. 451, decided by this Court Jan. 7, 1929, are based on Art. 171 C. P. which required, among other things, that the petition must mention the "name and title of the court to which it is addressed."

It is quite true that a petition does not contain the name and title of the court to which it is addressed or which is addressed to one court and filed in another is fatally defective, but we do not feel that the doctrine of the cases cited should be extended so as to include cases in which the name of the court is incorrectly given in an inconsequential detail. Particularly is the error here of no importance because the geographical limits of the city of New Orleans are the same as those of the Parish of Orleans. In other words, to all intents and purposes the city of New Orleans is the Parish of Orleans and we feel that it would be in

effect to abandon the substance for the shadow to dismiss this suit for so harmless an error as appears in the petition.

Defendant contends that as his wife was not living with him there could be no presumption that he authorized her to employ a physician. He cites Fabacher vs. Rouprich, 2 La. App. 138. We do not think that case is in point. There the wife was engaged in the operation of a dairy. Here the question involved is the liability of the husband to furnish to his wife, wherever she may be, the necessities of life. The liability of a husband to one who furnishes to a wife necessaries, and we know of nothing more necessary to a sick wife than medical attention, results from an implied agency in the wife to contract for and on behalf of the husband, and, wherever the wife may be, so far as the general public is concerned, she has this implied authority unless he, the husband, can show that he, himself, did furnish or was ready and willing to furnish such things as, according to his income and station in life, were necessaries, and to furnish them at the proper time and in the proper place.

That defendant deserted his wife we have no doubt whatever after reading the evidence. Being convinced of this, we are likewise convinced that she was justified in returning to her mother in Hammond, Louisiana. That was the best and cheapest place for her. Alone and in a boarding house and in a tubercular condition, she would soon have been on the mercy of the public and she was fully justified in going home.

It is manifest that whatever medical services her husband had arranged for her in New Orleans were of no use to her after reaching Hammond and she was therefore justified in obtaining medical

help there and the doctor who rendered the service was justified in assuming that she was still her husband's agent for the purpose of contracting for such service.

If then, on reaching Hammond she was presumed to be her husband's agent for the purpose of contracting for necessaries, this presumption would continue until the happening of some event which would have the effect of changing the legal situation and the burden of proving the happening of such an event is manifestly on the husband. He claims that it was terminated, if it ever existed, by the alimony proceeding in the Juvenile court. We do not feel that the proceedings in the Juvenile Court of themselves terminated the presumption that the wife had the authority to bind the husband for necessaries. The judgment rendered by that Court instead of showing that a termination of that agency was intended, on the contrary fixed the amount of the alimony at a smaller sum than the Judge believed was justified by the husband's income because the husband claimed that he had a large amount of doctor's bills to pay. We believe it is a fair assumption that these were among the very bills the husband had in mind when he made the plea referred to for a small alimony judgment.

The amount sued for was $119.00, but plaintiff included in that amount one item of $18.00 for a trip to Covington and he now admits that this should not have been included and he therefore asks for only $101.00. The amount of his charges, considering the services rendered seems to us to be most reasonable.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.