## ANDRY & FEITEL v. EWING, JR.

———

(November 3, 1930.  Opinion and Decree.)
(December 1, 1930.  Rehearing Refused.)
(January 6, 1931.  Writs of Certiorari and
Review Refused by Supreme Court.)

———

Joseph A. Casey, of New Orleans, attorney for plaintiff, appellee.

Dart & Dart and Leo L. Dubourg, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J.  The plaintiff, an architectural firm, brings this suit against the defendant for the sum of $525 alleged to be due under a verbal contract of employment whereby plaintiff undertook to prepare certain plans and specifications for a residence for the defendant.  Defendant in his answer admits the agreement and that the plans and specifications were prepared and furnished by the plaintiff, but denies liability on the ground that it was agreed and understood that the plans and specifications would be for a building not to exceed the cost of $12,000, but that the plans and specifications furnished were for a building that was approximately 50 per cent in excess of $12,000.

There was judgment in favor of plaintiff as prayed for and the defendant has appealed.

The pertinent facts of the case are as follows:

The defendant purchased a building site in the city of New Orleans for the sum of $6,000, and desired to erect a U-shaped residence, with a patio or court, which was to be formed by the three sides of the building.  He obtained a sketch and floor plan from a friend who had recently graduated from college as an architect and called upon Mr. Feitel, a member of the plaintiff firm, for the purpose of having plans and specifications drawn whereby the contemplated residence could be constructed under plaintiff's supervision.  At the time of his initial visit the defendant stated that he did not wish to spend in excess of $12,000 for such a building and requested that the plans and specifications be drawn accordingly.  Preliminary plans and specifications were drawn after a considerable number of conferences between

the parties, and then, in order to more accurately determine what the cost of the proposed structure would be, the parties agreed to have a contractor make a preliminary bid, which amounted to the sum of $17,926. The defendant frankly expressed his disappointment at the amount of the bid, whereupon the bidder and members of the plaintiff firm pointed out that final bids were always lower than preliminary bids. Defendant then suggested that there was another contractor whom he understood might do the work for a more reasonable price. The parties, at the suggestion of defendant, went to view a residence which had been constructed by this other contractor, but both members of the plaintiff firm advised the defendant that the building was cheaply constructed and that he ought not to have his residence similarly built. The members of plaintiff firm then made a number of suggestions by which the cost of the building could be materially reduced, but these suggestions were rejected by the defendant. Both members of the plaintiff firm then testified that the defendant stated that he would have the proposed residence built in accordance with the plans and specifications as drawn, even if it placed him in bankruptcy, and considered that this was an order to proceed with the drafting of the final plans and specifications for the erection of the building. The defendant denies that he made the statement attributed to him, but said that he did say if he were to erect the building at a cost of approximately $18,000 it would cause him to go into bankruptcy. The plaintiff prepared the final plans and specifications and asked for bids. There were several bidders and the bids ranged approximately from $18,000 to $21,000, including everything except lighting fixtures. When plaintiff informed the defendant of the amount of the bids he

was astonished and disappointed and stated that he was forced to abandon the construction of the building. Plaintiff again recommended certain changes to bring the price down, but defendant rejected them.

Some time later the defendant erected a different type residence on the building site and did not use the plans and specifications drawn by the plaintiff. The plaintiff then demanded the sum of $525, or 3½ per cent of the amount of $15,000, a figure that the plaintiff arbitrarily adopted, as a reasonable fee for its services. Defendant refused to pay the fee and this litigation resulted.

The two members of the plaintiff firm who testified as witnesses in its behalf admit that when the defendant called upon them for the purpose of having plans and specifications drawn, he stated that it was his desire to spend between ten and twelve thousand dollars for the construction of his residence. They further admit that they had no intentions of charging him any fee for the preliminary plans and specifications and for obtaining the preliminary bid by the contractor. They also admit that after the preliminary bid had been received that in order to lower the price of the building they recommended certain changes, but that the defendant refused to adopt them, as the appearance of the building was changed. It also appears that, even after the final bids, these two gentlemen further recommended changes in the building in order to bring the price of the bids down and again the defendant rejected them on the same ground. The defendant positively states that he made it clear to the members of the plaintiff firm that he did not desire to spend in excess of $12,000 for the contemplated residence. We, therefore, find that the defendant did place a limit of $12,000 for the building to

be covered by the plans and specifications which were to be drawn by the plaintiff.

We next pass to a consideration of the second contention that the defendant waived the limit of $12,000. This argument is based upon the alleged statement imputed to the defendant to the effect that, after the preliminary bid had been received, he stated to the members of the plaintiff firm that he would have the residence, as originally designed and planned, erected, even though it placed him in bankruptcy. Defendant denies that he made such a statement, but claims that he said if he were to build the proposed residence at a cost of approximately $18,000, he would be forced into bankruptcy.

Mr. Victor Wogan, a well-known and reputable architect of this city, who testified as a witness in behalf of plaintiff, on cross-examination was shown the sketch and floor plan and the preliminary plans and specifications for the building and testified that, if a client of his were to have asked him to draw plans and specifications covering a similar building and limited the cost so as not to exceed $12,000, that he would not even undertake such a task, because it was apparent by just looking at the plans and specifications that such a building would cost far in excess of $12,000. He further stated that he would also advise his client that if he cared to have the plans and specifications drawn, that in the event the bids would exceed the sum of $12,000, that his client would have to pay him his architectural fee; in short, that he would have a clear and definite agreement with his client concerning his fee. It appears to us that the members of the plaintiff firm did not act with reasonable care and prudence in going forward with the final plans and specifications and bids upon what would appear to any reasonable man a most unusual statement. We feel that the defendant's version of what he said is correct because, throughout the whole matter, he complained of the excessive amount of the preliminary bid and the members of the plaintiff firm were doing everything in their power to make changes to reduce the cost to an amount that would be acceptable to defendant. He finally rejected all such recommendations because they changed the appearance of the contemplated residence.

We are of the opinion that the case falls squarely under the doctrine of MacDonnell v. Dreyfous, 144 La. 891, 81 So. 383, where it was held (syllabus):

"Where an architect agreed to prepare plans for a building to cost in the neighborhood of $50,000, and the plans prepared and delivered were for one that would cost $69,000, together with the usual excess, the owner was not liable to the architect for the plans."

In the case of Williar v. Nagle, 109 Md. 75, 71 A. 427, 16 Ann. Cas. 982, the court said:

"An architect employed to prepare plans and specifications for a building to cost a specified sum cannot recover compensation for his services where the building cannot be erected except at a cost materially in excess of the amount specified."

See, also, Horgan & Slattery v. City of New York, 114 App. Div. 555, 100 N. Y. S. 68, 72; Maack v. Schneider, 57 Mo. App. 431; Bair v. School Dist. No. 141, 94 Kan. 144, 146 P. 347; Bernstein v. City of New York, 143 App. Div. 543, 127 N. Y. S. 987.

We do not believe the cases of Nolan v. Perloff, 10 La. App. 618, 119 So. 754, and Nolan v. Great Southern Wirebound Box Co., Inc., 12 La. App. 688, 127 So. 98, are applicable because in both of those cases

the court found that the defendant had not placed any limit on the amount that the proposed building was to cost.

The amount of the bids in the instant case being materially in excess of the amount originally fixed by defendant, which he never waived, we are of the opinion that our learned brother, a quo, erred in rendering judgment in favor of the plaintiff.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant, dismissing the plaintiff's suit at its cost.