## GHIRARDI v. KRISLER.
### No. 1478.

Court of Appeal of Louisiana. First Circuit.
June 14, 1935.

C. A. Blanchard, of Morgan City, for appellant.

Wise & Wise, of Morgan City, for appellee.

LE BLANC, Judge.

Plaintiff claims that during the year 1932 he was employed by the defendant to make certain estimates and to draw plans and sketches for a certain proposed building to be erected in the city of Morgan City and which was to be used as a moving picture theater.

He sets out in his petition that, following his said employment, he went to work and made the necessary estimates, which amounted to the sum of $10,494, and prepared proper plans, all of which were used by defendant. The proposed building was never constructed, but plaintiff nevertheless claims that he is entitled to be paid certain commissions on the estimates made by him and for his work in drawing the plans submitted by him to the defendant, and this suit is brought to recover the same. He alleges that the usual and customary charge for making estimates, as he did, is 1 per cent. of the amount involved, and therefore for that item he should recover the sum of $104.94. The usual and customary fee for making plans, specifications, and plats, he avers, is 3 per cent. of the amount involved, and on that item, therefore, he asks for $318.82. He claims, in addition, that the defendant employed him to go with him to Bayou Sale in the Parish of St. Mary to estimate a quantity of secondhand bricks which defendant subsequently bought, and that his services in this connection were fully worth the sum of $10, which amount he is also entitled to recover. All told, therefore, he prays for judgment in the sum of $429.76, with interest from judicial demand. The defendant, for answer, virtually denies each and every allegation of the plaintiff's petition, and, on the issue as thus made, the district judge, after trial, dismissed the demand and rejected plaintiff's suit at his costs. This appeal is from a judgment so decreeing.

It is apparent that the claim presented by the plaintiff is one for fees for services performed as an architect. In paragraph 3 of his petition, he alleges that he is "by trade and vocation" a builder, contractor, and an "architect." It is significant to note that, in defendant's answer to this paragraph, it is admitted that plaintiff is, "by trade, a builder and contractor," but the allegations of the paragraph are otherwise denied, and from the testimony adduced it is seen that one of the two defenses is that defendant never did employ plaintiff as an architect, but that whatever plans or estimates were made by him were made in the hope that he would secure the job as contractor in erecting the proposed building. There is no doubt that under the law, if there was any employment of the plaintiff and he actually rendered services as an architect, he is entitled to remuneration for those services, notwithstanding the fact that the building was never constructed. Sully et al. v. Pratt, 106 La. 601, 31 So. 161; Nolan v. Perloff, 10 La. App. 618, 119 So. 754. The important issue then is involved in a question of fact as to whether the plaintiff was really employed and rendered services as an architect or whether he was merely acting in the capacity of a contractor, soliciting the construction of a building.

■■ The first bit of testimony, which casts doubt around plaintiff's version that his employment was as an architect comes from his own lips, when, on cross-examination by counsel for defendant testing his qualifications and experience, he admits that he was at the time not a licensed architect. Asked when was the last time he had drawn plans and specifications for a building in his home town of Morgan City, he says that it was three years before, and even on that occasion he did not receive a fee as an architect, but was paid a commission as the contractor who erected the building.

To support his claim that he was employed by defendant as an architect to draw plans for the building and make the necessary estimates, including material and labor, plaintiff offers his testimony to that effect alone, and in it he is positively contradicted by the defendant, who testifies that plaintiff offered his services in preparing a plan for the building, gratis, with the expectation of getting the contract to erect it. This sharp division of the testimony between the two parties relative to the conversation which plaintiff claims formed the basis of his employment is of itself sufficient to shroud the demand in such legal uncertainty that the district judge was justified to reject it on this ground alone, and it is an unbending rule in the jurisprudence that, where there is conflict in the testimony, the findings of the trial judge on a question of fact will be given great weight on appeal, and will not be reversed unless manifest error appears.

But we believe that the plaintiff's claim is otherwise of a weak character. The documents submitted by him as the plans and specifications and the estimates prepared by him and on which he relies do not impress us as the finished product of an architect who intended that they be used and followed by any contractor in erecting a building complete in its every detail. And yet such, do we understand, is what is comprised in the plans and specifications prepared and submitted by an architect. The purported plans in this case represent no more than pencil sketches, and preliminary drawings and the estimates for labor and material are far from sufficient to enable the prospective builder to know definitely what the ultimate cost of the building will be. Plaintiff has not shown how the figure $10,494 was arrived at. We find it written in a rather odd place on one of the documents introduced by plaintiff as part of the estimate prepared by him. Even that figure is $494 more than the $10,000 which plaintiff himself admits was the limit placed by the defendant on the amount he would spend for the building. If we add the various totals of the items included in the estimates, however, we reach a figure which is considerably in excess of that amount.

There is considerable testimony regarding certain blueprints made by the International Steel Company of Evansville, Indiana, which is engaged in structural steelwork, but none of it seems to have any direct bearing on the question here under discussion. Plaintiff contends that these blueprints are copies of his drawings submitted to that company as the architect engaged to draw plans for the contemplated building. Whilst the blueprints may be said to have been constructed from plaintiff's drawings and from supplementary information supplied by him, they can by no means be called blueprints of his drawings. Plaintiff admits that they are not exact copies, and, as proof that these people did not understand that they were merely tracing blueprints for the plaintiff, we refer to a letter written by them to the plaintiff on April 29, 1932, in which it is stated: "We are sure that we will be in position to work out satisfactorily an economical design on his (referring to defendant) building that will save him considerable in cost." If plaintiff's plan or design of the building had been accepted by the defendant and was the one that was to be used, why, it may be asked, was this company preparing another design that would "save him considerable in cost"? From the correspondence introduced in the record, it is our impression that plaintiff's sketch was submitted to the International Steel Company for the purpose of having that company make an offer on the structural steelwork that was to go in the building, and in connection with its offer a design of the building was made and submitted in the form of blueprints along with the offer made.

In our opinion, plaintiff has failed to carry the burden of proof that he was employed by the defendant as an architect and that he rendered services as such which entitle him to the fee he seeks to recover. Moreover, we find certain admissions in his own testimony which tend to strengthen the defendant's version of the matter that it was as a contractor, bidding on the work, that he performed the services for which he claims now he should be paid. When asked if he ever "dickered" with the defendant to build this theater, he answers: "I do not know that I would define it as that, but I was figuring with him for the purpose of erecting and completing the building." Again he is asked: "Were you not after that job to build that

building?" and he answers: "Certainly." In another part of his testimony on cross-examination he states that he "certainly had all valid reasons to believe that he would construct the building with plans which he had prepared and such further plans as would be required to suit the wishes of the defendant." Such testimony not only weakens the plaintiff's case, but it adds weight to the defendant's side of the controversy, and impresses us with the correctness of the judgment of the district court.

With regard to the claim for $10 for estimating secondhand bricks at Bayou Sale, we find the same sharp conflict in testimony. Plaintiff claims that it was the defendant who asked him to go with him to Bayou Sale for the specific purpose of looking over and estimating the bricks. Defendant, on the other hand, says that it was plaintiff who asked to go with him when he went to look at the bricks, as he wanted to get the job of cleaning them, if he could. There is no evidence to substantiate an estimate made by the plaintiff, and, in view of the discrepancy in the testimony that there is on the subject, we certainly cannot say that the district judge was in error in dismissing that part of plaintiff's claim as well as the other.

For the foregoing reasons, it is ordered that the judgment appealed from be affirmed, plaintiff-appellant to pay all costs.