70 So.2d 693 (1954)
BRUNO
v.
GAUTHIER et al.
No. 20255.
Court of Appeal of Louisiana, Orleans.
March 8, 1954.
*694 Carroll Montet, New Orleans, for defendant-appellant.
Frank S. Bruno, New Orleans, for plaintiff-appellee.
JANVIER, Judge.
In the petition addressed to "the Honorable the Judges of the First City Court for the Parish of Orleans, State of Louisiana," and filed in the First City Court of the City of New Orleans, plaintiff, Victor H. Bruno, alleges that he is a licensed architect, authorized to practice his profession in Louisiana; that on August 5, 1949, he was employed by Mr. and Mrs. I. J. Gauthier to prepare plans and specifications for a residence for them; that he prepared the said plans and specifications, and on February 2, 1950, delivered them to the defendants; that it was agreed that he was to receive a fee of $500; that he has been paid $100 on account and that there is now due to him an unpaid balance of $400. He prays for judgment against both Mr. and Mrs. Gauthier in the sum of $400.
To this petition defendant filed an exception of misjoinder of parties defendant and an exception of no cause of action, and, at the same time, as required by the rules of the First City Court, they filed an answer in which they admitted that the plaintiff had been employed to prepare plans and specifications for them. However, they averred that it had been agreed that the house which they intended to build would cost not more than $18,000, and that the fee which plaintiff was to receive would be *695 three per cent of the total cost of the house, and that for this fee plaintiff would not only prepare the plans and specifications, but would also supervise the construction. Defendants also alleged that on June 5, 1952, they advised plaintiff in writing that the plans could not be used because they had "received bids of between $24,000 and $35,000."
When the matter was called for trial the court a qua made the following statement:
"The Court overrules all exceptions except that which relates to the Court being addressed as the First City Court of the Parish of Orleans instead of the First City Court of the City of New Orleans; in reference to that exception the Court permits instanter amendment to change the petition to read to the Honorable the Judges of the First City Court of the City of New Orleans; insofar as the exception of misjoinder of parties, the Court will refer that to the merits."
Whereupon counsel for plaintiff amended the caption of the petition so as to make it read: "To the Honorable the Judges of the First City Court of the City of New Orleans, State of Louisiana."
After a trial on the merits, there was judgment dismissing the suit as against Mrs. Gauthier and in favor of plaintiff and against Mr. Gauthier in the sum of $400, with legal interest from judicial demand, and for costs. From this judgment Mr. Gauthier has appealed suspensively. Plaintiff has not appealed from the judgment insofar as it dismisses his suit against Mrs. Gauthier.
Counsel for appellant argues that the suit should be dismissed for the reason that the petition, as originally filed, was addressed to a non-existent court and that there could be no amendment which could cure such defect.
In Overton v. Nordyke, 10 La.App. 317, 120 So. 544, we discussed a situation quite similar to that which is raised by the contention that the petition is addressed to a non-existent court. There the petition was addressed to "First City Court for the Parish of Orleans," and we held that it was not fatally defective since the geographical limits of the City of New Orleans are the same as those of the Parish of Orleans. We felt that to uphold such a contention "would be in effect to abandon the substance for the shadow." And we held that the suit should not be dismissed "for so harmless an error as appears in the petition."
In Kunnes v. Kogos, 168 La. 682, 123 So. 122, 123, 65 A.L.R. 706, the Supreme Court considered a case in which the petition was addressed to "the judges of the civil district court for the parish of Orleans," instead of to the judges of the First City Court of the City of New Orleans, the court in which the suit was actually filed. The Supreme Court, in holding that the caption might be amended, quoted from Southport Mill v. Friedrichs, 167 La. 101, 118 So. 818, 820, in which the Court had said:
"The whole tendency of modern practice is to yield as little as possible to technicalities and afford aid to the filing of amendments as far as is consistent with substantial justice."
Counsel for appellant also argues that the suit should be dismissed for the reason that plaintiff has offered no written proof that he is a duly licensed architect.
In Ruiz v. Trocchiano, La.App., 38 So.2d 184, 187, we quoted with approval from the opinion of the trial court as follows:
"`It has been held on several occasions both by the Supreme Court and the Courts of Appeal that where an agent sues for commissions, he is not required to allege or prove the payment of his licenses; his failure to have a license being a matter of defense to be set up and proved by the defendant. Stanford v. Bischoff, 159 La. 892, 106 So. 371; Viguerie v. Davis, 5 La.App. 77; Layne v. Henderson, 9 La.App. 452, 121 So. 313.'"
*696 In the case at bar, the defendants admit that they employed the plaintiff as an architect to prepare plans and specifications, and they admit that, except for the fact that the cost of the building was greater than the amount they intended to pay, the plans and specifications were quite satisfactory. Mrs. Gauthier stated:
"I thought the plans were lovely, so much so that I recommended Mr. Bruno to several of my customers, and he built homes for them."
The plaintiff himself testified that he had "two degrees from the University of Tulane," and that he is licensed by the State of Louisiana to practice "architecture" and that the license had been given him by "the Department of Standards and Occupations." As a matter of fact, the objection made by counsel to the effect that the plaintiff did not produce written proof that he is a licensed architect was not made until quite some time after the plaintiff had testified that he was licensed and had answered several additional questions.
The only questions which give us any concern at all are whether or not there had been an understanding that the plans and specifications would produce a house which could be built for $18,000, and if so, whether those plans could have been carried out for that amount, and also whether the agreement contemplated that the fee was to cover the services of the architect in supervising the construction, as well as of the preparation of the plans and specifications.
The record convinces us that the agreement contemplated only the preparation of the plans and specifications and that it was not understood that the plaintiff was to supervise the construction.
It seems that Mrs. Gauthier considered herself an expert in such matters and that she intended to take charge of the construction herself and to sublet the various portions of the construction to sub-contractors. Mr. Gauthier had little, if anything, to do with the entire matter and did not even testify at the trial.
Of course, if plaintiff was told that he must produce plans for a house which would not cost more than $18,000 and it could be shown that the plans which he did produce could not have been carried out without the expenditure of substantially more than that amount, he would not be entitled to his fee, for it is well settled that where, in such a contract, there is an understanding as to the limit which is to be spent and it is shown that the plans produced cannot be carried out without the expenditure of an amount substantially in excess of that limit, the architect is not entitled to his fee. It was so held in Rosenthal v. Gauthier, La.Sup., 69 So.2d 367, 368, in which the Supreme Court quoted with approval from the opinion of the District Judge as follows:
"`* * * where an architect furnished plans and specifications for a building in excess of the originally contemplated cost that the defendant would not be liable for the architect's fee, and the Court believes that there was definite understanding as to the consideration by and between defendant and plaintiff herein as to the cost limit of the construction of the hospital, and that plans were submitted by the plaintiff herein for a building to cost greatly in excess of the original proposed cost of the building, and for that reason that the defendant herein is not liable for the architect's fees. * * *'"
See, also, MacDonnell v. Dreyfous, 144 La. 891, 81 So. 383, and Andry & Feitel v. Ewing, 15 La.App. 272, 130 So. 570.
Here the record shows many things which plainly indicate that, though it was originally understood that the defendants intended to spend approximately $18,000, that figure was based on the fact that Mrs. Gauthier was certain that she could save four or five thousand dollars by what is termed "being her own contractor," and it is also obvious that, after the original ideas of the defendants were discussed, quite a number of changes and additions in the plans were required by them, each one of *697 which obviously added to the cost of the building.
As a matter of fact, there is no actual proof in the record as to what would have been the cost of the building. The only figures which we find given by defendants are in their answer in which they quote from a letter written to plaintiff two years and four months after the plans were delivered stating that they had received bids for between twenty-four and thirty-five thousand dollars.
We feel that even if the original agreement contemplated that the building would not cost more than about $18,000, those changes and additions which were required by defendants obviously made it necessary that a larger amount be contemplated if the building was to be constructed. But more important still we consider the actions of the defendants after the plans were furnished. As we have already shown, no objection was made to them. They were found to be quite satisfactory. No payment was made to the plaintiff for the plans and, as he explains it, he "was put off" whenever he demanded payment.
It is shown that though he had furnished the plans on February 2, 1950, he did not make an actual demand for his fee until December, 1950, and that at that time he was paid $100 on account. It is testified by him that when Mrs. Gauthier paid him that $100 she made an entry in her check book reading as follows: "Balance due $400." When Mrs. Gauthier was asked whether she had made such an entry in her check book she said: "I believe I did." She attempts to explain this entry by saying that "plaintiff was sitting right alongside of me; my husband wasn't there." Again, on October 31, 1951, plaintiff wrote the defendants demanding payment of the balance; he wrote again on March 3, 1952, and again on June 18, 1952, and received no answer to any of his communications.
Our conclusion is that plaintiff complied with his contract, and that the real reason for the failure of the defendants to construct the house was that they expected to do so with funds to be derived from the sale of the house which they then owned and that they could not sell that house for a very long time after this contract was entered into.
The record shows that, though Mrs. Gauthier conducted all the negotiations with the plaintiff, Mr. Gauthier was aware of what was going on and authorized it and that the house was in fact to serve as a domicile for Mr. and Mrs. Gauthier. Therefore any contracts made in connection therewith were actually for the benefit of the community. Mr. Gauthier is therefore responsible.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.