JANVIER, Judge.
Victor H. Burno, a duly licensed architect, brought this suit against Mr. and Mrs. Walter F. Williams alleging that, under a verbal contract made with them, he prepared plans and specifications for a residence; that these plans and specifications were accepted by them; that they agreed to pay him a fee fixed at three per cent of the cost of building the residence; that the residence was not built by defendants but could have been built for $40,000, and that in spite of amicable demand defendants have refused to pay him his fee. He prays for judgment against both Mr. and Mrs. Williams in the sum of $1,200.
Defendants answered, denying that Mr. Williams had had anything to do with or any knowledge of the contract and averred that Mrs. Williams had discussed with plaintiff the possibility of his preparing plans and specifications for and supervising the construction of a residence “for her account,” and that she had advised plaintiff of the type of residence she wanted and had given him a rough sketch, and that she had told plaintiff that the residence should cost not more than $30,000,
Defendants further averred that Mrs. Williams had agreed that if the plans and specifications met with her approval and if the building contemplated could be constructed for not more than $30,000, “she” would pay plaintiff a fee to be fixed at three per cent of the actual cost and that for this fee plaintiff, in addition to the preparation of the plans and specifications, would also supervise the construction. It was also averred by defendants that the plans and specifications which were prepared but which were never delivered “were * * * not at all consistent with what she (Mrs. Williams) wanted and explained that she desired,” and that “to build the house under the plans he purportedly drafted for her account would cost approximately $55,000.00.”
A great deal of evidence was submitted by all parties. Plaintiff endeavored to show that the plans and specifications which he prepared were in accordance with what Mrs. Williams said she wanted, and that the failure to construct the residence had not resulted from dissatisfaction of Mrs. Williams with the plans nor from the fact that the building which the plaintiff contemplated would have cost more than Mrs. Williams originally intended to spend, but solely from the fact that Mrs. Williams had changed her mind and no longer desired to build a residence.
On the other hand, on behalf of defendants, much evidence was offered in an effort to show that the plans and specifications contemplated an entirely different type of building from that which Mrs. Williams had in mind and had discussed with plaintiff, and that the building, which would have resulted from the use of the plans and specifications, would have cost substantially more than the amount Mrs. Williams had told plaintiff she could spend.
The’ record shows conclusively, as the District Judge found, that Mr. Williams had no knowledge whatever of the fact that Mrs. Williams had made or was contemplating making a contract for the construction of a residence and that he did not know that she had consulted plaintiff. After all of the evidence had been submitted, the District Judge rendered the following judgment:
“This matter having been tried and submitted for adjudication, and the Court'being of the opinion that the law and the evidence are such as to require that there be judgment herein in favor of the defendant husband and the community, but that it is quite possible that there should be judgment against the defendant wife individually a result, *43 however, which cannot now be allowed under the petition and prayer, and that petitioner should be given the opportunity to amend and prove allegations and a prayer for a judgment against the wife individually for the reasons orally assigned:
“It Is Ordered, Adjudged and Decreed that this cause be now reopened and that the petitioner be given thirty (30) days from this date in which to amend his petition and prayer in accordance with the above.”
Plaintiff then filed a supplemental and amended petition. In it he alleged that, should it be found that Mr. Williams had not entered into the oral contract sued on, then Mrs. Williams operated a corporation, the Williams Molasses Company, which was owned jointly by Mr, and Mrs. Williams and that Mr. Williams had delegated to Mrs. Williams full and complete control over the management, operation and funds of that corporation, and that, accordingly, when Mrs. Williams entered into the contract in question she did so under “the blanket authorization grant” of Mr. Williams, and that “she therefore pledged the funds of the Williams Molasses Company for the payment of architectural fees agreed upon.” In the alternative that in no event could a judgment be rendered against Mr. Williams and against the community of acquets and gains existing between Mr. and Mrs. Williams, plaintiff averred that Mrs. Williams had entered -into the contract in her separate capacity and, in that capacity, had “pledged her separate estate for the architectural fee * * * ”
To this supplemental petition defendants filed exceptions of no cause of action and no right of action and also an answer. In this answer they again denied that Mr. Williams had authorized or had had any knowledge of the making of the contract. They also denied that the' management of the Williams Molasses Company had been such as to warrant the conclusion that Mr. Williams had constituted Mrs. Williams his agent for the purpose of representing him in the making of community contracts or of doing anything which would bind either him or the community. Defendants also denied any liability of Mrs. Williams in her separate capacity.
The exceptions were overruled and the matter “was submitted for adjudication on the testimony and evidence previously taken * * Without the introduction of any additional evidence, there was then judgment dismissing the suit as against Walter Francis Williams and also as against the community but in favor of plaintiff and against Mrs. Williams “individually and against her separate estate” in the sum of $1,050, with legal interest from judicial demand and for all costs. From this judgment Mrs. Wiliams appealed suspensively and devolutively.
Plaintiff did not appeal from the judgment insofar as it dismissed his suit as against Mr. Williams nor did he answer the appeal of Mrs. Williams.
When the matter was argued before us counsel for Mrs. Williams attacked the action of the District Judge in allowing plaintiff to amend his petition so as to make Mrs. Williams a party defendant in her separate capacity. They say that, in the petition upon which the trial was had, there was alleged an oral contract on which plaintiff sought to hold liable Mr. Williams as head of the community which existed between the two defendants, whereas in the supplemental petition it is sought to hold Mrs. Williams liable in her separate capacity. Counsel assert that thus the issue was substantially changed and they say that because of the provisions of Article 419 of our Code of Practice this amendment should nht have been allowed. This article reads as follows:
“After .issqe joined, the plaintiff may, with the leave of the -court, amend his original petition; provided the amendment does not alter the substance qf his demand by making it different from the one originally brought.”
For some -strange reason it may be noted that, in many suits in. which a judgment *44 is sought against a community of acquets ■'and gains, -both the husband and wife are named in the petition as defendants. In any suit in which the allegations, if true, would show a community obligation not only is there no necessity that the wife be made a party defendant, but her inclusion in the suit is mere surplusage. The husband, as head and master of the community, is the only party who should be made defendant in such case. The wife in such situation cannot properly be made a defendant except on the theory of separate liability on her part, and this theory could be based only on the idea that the contract on which such suit is based was made by .the wife for her own separate benefit and that the stipulated price was to be paid by her with her separate funds.
In a case the facts of which resemble this remarkably closely — even in the fact that there the plaintiff was the same party who is plaintiff here and was suing for his fee for preparing plans and specifications —there was judgment dismissing the suit as against the wife. See Bruno v. Gauthier, La.App., 70 So.2d 693.
It may be that the theory on which plaintiff sought to obtain judgment against Mrs. Williams in the original petition was that she had made the contract in her separate capacity. When that original petition was filed, Mrs. Williams, instead of having herself dismissed on an appropriate plea or exception, did not do so but, with her.husband, filed answer in which they both denied that he, the husband, had made the contract sued on and averred that it had been, made by the wife, Mrs. Williams, “for her account.” In that answer the defendants also stated' that Mrs. Williams had agreed to pay the fee. In other words, if the petition is not, of itself, susceptible of being interpreted as a suit against the husband as head of the community, with an alternative charge that the wife may be liable in her separate capacity, it would seem that the wife herself has, by her own answer to the original petition, made her present position untenable. She has kept herself in the suit and, on other grounds, has denied her liability. Accordingly, we feel that the contention that the supplemental petition changed the issue is not well .founded. ■ ■
However, when we come to consider the merits of the controversy we reach the conclusion that there is no liability in Mrs. Williams for the reason that the record shows rather conclusively that whatever reasons she may have had for refusing to accept the plans and to pay the fee agreed upon, she was fully justified in refusing because of the fact that the plans and specifications which were prepared by the plaintiff could not have been carried out except'by the expenditure of an amount of money substantially in excess of the amount which Mrs. Williams told the plaintiff she was willing to spend.
There is a dispute as to just how much she told him she could spend: Mrs. Williams says that she told him that her limit was $30,000 and that in this there must be included the cost of the ■ air conditioning. Plaintiff says that Mrs. Williams told him that the cost should not exceed $35,000, including the air conditioning, and he also says that after he had prepared the first draft of the plans and in fact even before they were completed, Mrs. Williams 'required and insisted upon many additions and alterations, all of which increased rather substantially the cost of constructing the building. There is no doubt that this is true, but even according to the allegations of the petition those additional costs made it necessary only that $5,000 be added to the original amount which was to be spent.
In the petition plaintiff alleges that the first limit given him was $35,000, but that “during the planning * * * numerous additions were made by the defendants increasing the final cost to $40,000.00.”
In the record there is the testimony of an expert builder who compared the original plans with the final ones showing the additions. He said that the additions would have added $8,450 to the cost which would have been necessary to erect the building under the original plans. Even *45 if these, figures he accepted'as icorrect. and even if it be conceded that Mrs. Williams gave plaintiff an original limit of $35,000 and that" the required additions would^have increased the cost by $8,450, the total amount which she can be said to have agreed to spend was only $43,450, whereas we are convinced from thé' evidence offered by plaintiff himself that the house as planned by him could not have been constructed* for less than $55,000. Plaintiff himself said that he “put the house out on bids some time later and got some approximate figures from different contractors” and that, “one of' 'the prices was from Upham Construction Company, whidh was for $55,000.”
Furthermore, it appears from a demand which, was made by plaintiff for the payf ment of his fee that he fixed .the*fee which was due him at three per, cent of $55,000 and demanded $1,650 in payment of this fee. Thus we find that even,if it be .assumed that Mrs. Williams, gave plaintiff a limit of $35,000 and .that the extras would have added $8,450, the house would have cost at least $11,550 more than was contemplated by Mrs. Williams.
Plaintiff says that Mrs. Williams told him that she would take charge of the building herself and let all of the work out on subcontracts and that she could obtain wholesale prices on the materials, and that had she been able and willing to do so this she could have constructed the building at a cost substantially lower than the bid submitted by a professional contractor. We are not convinced from the record that there was any such understanding, and we feel that where such peculiar circumstances do exist the architect should make absolutely certain of the intention of the person with \yhom he deals. Surely if an architect is given a top limit he cannot, unless the evidence shows it clearly, be heard to say that he understood that the party with whom he contracted intended to do the work in so unusual a way.
Counsel for plaintiff also asserts That the record forces 'upon us the1 conclusion that Mrs. Williams was not .concerned with the price of the house, and -that her reason for refusing to accept and to pay for the plans was the fact that for some unaccountable reason she had changed her mind and had decided not to build the residence, howevet low the cost'might be: ' ■ 1 '
It is true that there were lengthy negotiations and; that Mrs. Williams on' several occasions required chánges in the plans, all of which actions on her part might have indicated to some extent'that she was not especially interested in keeping the cost" of the’ building within the 'limit which she' had- set. However, we conclude from this record that Mrs. Williams at no time waived her right to demand that the plans be such as could be carried out within the limit which she had set.
We have not overlooked our decision in Bruno v. Gauthier [70 So.2d 696], supra. The facts found there; as already noted, were ‘miraculously similar to those which confront us. The plaintiff, Bruno, was the same. The cause of action was’ based on an alleged oral contract which was preceded by negotiations almost exclusively between the plaintiff and the wife of the defendant. There was a dispute over whether the'three per cent fee was to cover the services of the architect in supervising the construction, as well as in preparing the plans and there was also a controversy as to whether the. limit which had been set could be insisted' upon and there was a dispute over the question of whether the wife of the defendant, who “considered herself an expert 'in such matters *, * * intended to fake charge of the construction herself and to sublet the various portions of the construction to sub-contractors.”
There we held the husband, as head of the community ¡ liable for the fee of the architect, but we felt that'
“the real reason for the failure of the defendants to construct the house was that they expectéd to do so with funds to be derived from the sale of the house which they then owned and.that *46 they could not sell that house for a very long time after this contract was entered into.”
■In other words, it appeared that the defendants found the plans satisfactory and accepted them and made no complaint that the cost of the building would exceed the limit which had been set. As a matter of fact, they offered no proof as to what the cost would have been though they retained the plans for more than two years. Furthermore, it was shown that the wife made a payment on account of the bill of the architect and in her check-book made a notation as to the balance which was due him. We held that the price limit which had been set had been abandoned by the defendants and that they refused to pay the fee of the architect solely because they had decided not to construct the building.
The situation here is different. Although there are substantial disputes over the several questions which we have discussed, one important fact stands out prominently and that is, .as we have already said, that according to plaintiff himself the cost of constructing the building according to his plans would have exceeded the total limit fixed by Mrs. Williams by more than $11,000.00. The situation is controlled by the rule established in various earlier cases, notably Andry & Feitel v. Ewing, 15 La.App. 272, 130 So. 570; Van Os v. Gray, 12 La.App. 698, 127 So. 75; Mohr v. Fabacher, Orleans No. 7590; Burk v. Rosenberg, 14 Orleans App. 324.
In its latest decision on the subject, the Supreme Court followed the well established rule that where a limit is set the architect is not entitled to his fee if the plans which he prepares cannot be constructed except by the expenditure of an amount substantially in excess of the limit. See Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367.
The judgment appealed from is annulled, avoided and reversed ( and plaintiff’s suit is dismissed at his cpst.
Reversed.